UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID ANDERSON, on behalf of himself and all others similarly situated,<br><br>                    Plaintiffs,<br><br>-against-<br><br>THE HUDSON NATIONAL GOLF CLUB, INC., (d/b/a "Hudson National Golf Club"), THERON C. HARVEY, RICHARD HARDIN, and KEVIN MCCONAUGHY,<br><br>                    Defendant. | Case No.:  7:23-cv-522<br><br>**COMPLAINT**<br><br>**COLLECTIVE AND CLASS ACTION** |

Plaintiff, David Anderson, ("Plaintiff"), individually and on behalf of all others similarly situated, by his attorneys, upon personal knowledge as to himself and upon information and belief as to all other matters, complaining of Defendants, THE HUDSON NATIONAL GOLF CLUB, INC., (d/b/a "Hudson National Golf Club"), and THERON C. HARVEY, RICHARD HARDIN, and KEVIN MCCONAUGHY (collectively "Defendants") alleges:

**1.  NATURE OF ACTION**

1.      This is a wage and hour employee misclassification action. This action seeks to recover unpaid minimum and overtime wages, spread of hours, statutory and liquidated damages, and other monies pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA"), and the New York Labor Law § 190, et seq. ("NYLL").

2.      Hudson National Golf Club is an exclusive golf club, 18-hole course, and restaurant. Plaintiff, David Anderson, and similarly situated employees, worked as golf caddies at Hudson National Golf Club. Defendants are the corporate entity which operates the Club, the Director of Club Operations, and Caddie Masters—all of whom are employers as a matter of economic reality.

3.      Defendants maintain formal and functional control over caddies like Plaintiff, David Anderson. Hudson National Golf Club requires golfers to use its caddies. And caddies are an

integral to the golfing experience at Hudson National Golf Club, which is a walking course. Defendants control the caddie hiring process and exercised power to hire and fire caddies. Defendants issued written work schedules to caddies that directed caddies to work specific shifts at specific dates, times, and locations at Hudson National Golf Club. Caddies were directed to arrive early, or on time. Caddies were reprimanded for lateness. And caddies were frequently required to remain on duty waiting for golfers to arrive for a tee times. Defendants supervised and directed caddies in performing caddie and non-caddie work. Defendants also exercise control over the rate and method of payment for caddies and discouraged caddies from discussing compensation with golfers. Caddies do not own independent business entities and make little, if any, upfront investment in caddying. Moreover, caddies were required to obey a dress code and wear uniforms emblazoned with Hudson National Golf Club logos.

4.      Despite maintaining formal and functional control over the caddies, Defendants did not pay caddies for their regular work. Instead, Defendants misclassified caddies as "independent contractors," to evade the costs and responsibilities of employment.

## 2.  **JURISDICTION**

5.      This Court has subject matter jurisdiction of this case pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331 and 1337, and has supplemental jurisdiction over Plaintiff, David Anderson's claims under the NYLL pursuant to 28 U.S.C. § 1367.

## 3.  **VENUE**

6.      Venue is proper in the Southern District of New York under 28 U.S.C. § 1391, as the Hudson National Golf Club is located in the Southern District of New York.

4. **THE PARTIES**

4.1. **PLAINTIFFS**

7.      Plaintiff, David Anderson, worked for Hudson National Golf Club as a golf caddie from approximately May 2010 to approximately June 23, 2021.

8.      Plaintiff, David Anderson, was engaged in the production or in the handling or selling of, or otherwise working on, goods or materials that have been moved in or produced for commerce.

9.      A written consent form for Plaintiff, David Anderson, was filed with this collective and class action complaint.

10.     Throughout his employment, Plaintiff, David Anderson, was an employee within the meaning of the FLSA and NYLL.

4.2. **DEFENDANTS**

4.2.1.  **Defendant THE HUDSON NATIONAL GOLF CLUB, INC., (d/b/a "Hudson National Golf Club")**

11.     Defendant THE HUDSON NATIONAL GOLF CLUB, INC., (d/b/a "Hudson National Golf Club") is a New York not-for-profit corporation that owns, operates, and does business as the "Hudson National Golf Club," a golf course located at 40 Arrowcrest Drive, Croton on Hudson, New York 10520.

12.     Defendant THE HUDSON NATIONAL GOLF CLUB, INC., (d/b/a "Hudson National Golf Club") had an annual gross volume of sales in excess of $500,000 within the three years prior to the filing of this Complaint.

13.     Upon information and belief, Defendant THE HUDSON NATIONAL GOLF CLUB, INC., (d/b/a "Hudson National Golf Club") earned approximately $10,022,741 in total revenue in 2020.

14. Upon information and belief, the membership fee to join the Hudson National Golf Club can reach $100,000.

15. Upon information and belief, membership dues may exceed $30,000 per year.

16. Hudson National Golf Club is an "enterprise engaged in interstate commerce" within the meaning of the FLSA.

17. Defendant THE HUDSON NATIONAL GOLF CLUB, INC., (d/b/a "Hudson National Golf Club") is an "enterprise engaged in interstate commerce" within the meaning of the FLSA.

18. Hudson National Golf Club included a "restaurant," as defined in N.Y. Comp. Codes R. & Regs. tit. 12, § 146-3.1.

19. Defendant THE HUDSON NATIONAL GOLF CLUB, INC., (d/b/a "Hudson National Golf Club") is a covered employer within the meaning of the FLSA and the NYLL, and, at all times relevant, employed Plaintiff, David Anderson, and similarly situated employees.

20. Defendant THE HUDSON NATIONAL GOLF CLUB, INC., (d/b/a "Hudson National Golf Club") exercised control, oversight, and direction over Plaintiff, David Anderson, and similarly situated employees.

21. Defendant THE HUDSON NATIONAL GOLF CLUB, INC., (d/b/a "Hudson National Golf Club") had power to hire and fire Plaintiff, David Anderson, and similarly situated caddies.

22. Defendant THE HUDSON NATIONAL GOLF CLUB, INC., (d/b/a "Hudson National Golf Club") applied the same employment policies, practices, and procedures to all caddies, including policies, practices, and procedures with respect to payment of minimum wage, overtime compensation, spread of hours, and recordkeeping.

### 4.2.2.   Defendant THERON C. HARVEY - Director of Club Operations

23.     Defendant THERON C. HARVEY is the Director of Club Operations at Hudson National Golf Club.

24.     Defendant THERON C. HARVEY has been the Director of Club Operations at Hudson National Golf Club since approximately 2014.

25.     Defendant THERON C. HARVEY has a Bachelor of Business Degree in Professional Golf Management and Marketing from New Mexico State University.

26.     Defendant THERON C. HARVEY is the liquor license principal for the Hudson National Golf Club.

27.     Defendant THERON C. HARVEY regularly corresponded using the email tharvey@hudsonnational.org.

28.     Upon information and belief, Defendant THERON C. HARVEY directed caddies in how to enforce golf rules at the Hudson National Golf Club.

29.     Upon information and belief, Defendant THERON C. HARVEY participated in enforcing the requirement that all caddies wear uniforms.

30.     Upon information and belief, Defendant THERON C. HARVEY continued the requirement that caddies refer to members and guests as "Mr." and "Mrs."

31.     Upon information and belief, Defendant THERON C. HARVEY established policies that caddies must play a larger role in policing play of golfers, for instance in enforcing the pace of play rules.

32.     Upon information and belief, Defendant THERON C. HARVEY established policies that caddies must report slow play and poor etiquette of golfers.

33.     Defendant THERON C. HARVEY played a principal role in streamlining daily operations of Hudson National Golf Club, which included caddie operations.

34.     Upon information and belief, Defendant THERON C. HARVEY issued instructions to the Caddie Master who then directed caddies, such as Plaintiff, David Anderson. For example, Defendant THERON C. HARVEY directed the Caddie Master to instruct caddies to park in certain locations to accommodate members and guests.

35.     Upon information and belief, Defendant THERON C. HARVEY regularly met with the board of directors at Defendant THE HUDSON NATIONAL GOLF CLUB, INC., (d/b/a "Hudson National Golf Club").

36.     When the COVID19 pandemic required restrictive business practices, Defendant THERON C. HARVEY, and the board of Defendant THE HUDSON NATIONAL GOLF CLUB, INC., (d/b/a "Hudson National Golf Club") established instructions that were sent to caddies that staff would not be allowed on property and golfers would carry their own bags.

37.     Upon information and belief, Defendant THERON C. HARVEY had power to hire caddies. For example, Defendant, THERON C. HARVEY, would direct the Caddie Master who to hire and not hire.

38.     Defendant, THERON C. HARVEY's recommendations for hiring were given particular weight.

39.     Upon information and belief, Defendant THERON C. HARVEY has power to fire caddies. For example, upon information and belief, Defendant THERON C. HARVEY had an argument with a caddie and terminated the caddie.

40.     Defendant, THERON C. HARVEY, has hired one or more Caddie Masters.

41.     Defendant, THERON C. HARVEY, has fired one or more Caddie Masters.

42.     Defendant THERON C. HARVEY has the power to supervise and discipline caddies. For example, if a caddie was the subject of a complaint, then Defendant, THERON C. HARVEY, would meet with the caddie and review the situation.

43.     Upon information and belief, Defendant THERON C. HARVEY determined the rate and method of payment to caddies. For example, upon information and belief, when outings or events occurred, Defendant, THERON C. HARVEY, was involved in setting the rate of pay for caddies.

44.     Defendant THERON HARVEY exercised sufficient control over the operations of the Hudson National Golf Club caddie operations to be considered Plaintiff, David Anderson's, and similarly situated caddies' employer under the FLSA and NYLL.

45.     Defendant THERON C. HARVEY is an employer under the FLSA and NYLL.

**4.3. <u>Defendant RICHARD HARDIN – Caddie Master</u>**

46.     Defendant RICHARD HARDIN worked as a Caddie Master at the Hudson National Golf Club from approximately 2004 to approximately 2017.

47.     Defendant RICHARD HARDIN participated in hiring Plaintiff, David Anderson.

48.     Upon information and belief, Defendant RICHARD HARDIN participated in hiring caddies.

49.     Defendant RICHARD HARDIN participated in supervising Plaintiff, David Anderson, and similarly situated caddies.

50.     As Caddie Master, Defendant RICHARD HARDIN set the work schedules of Plaintiff, David Anderson, and similarly situated caddies.

51.     As Caddie Master, Defendant RICHARD HARDIN paid Plaintiff, David Anderson, and similarly situated caddies.

52.     As Caddie Master, Defendant RICHARD HARDIN had power over caddies to hire, fire, set schedules, set terms and conditions of employment, set the rate and method of compensation, and maintain employment records (if any).

53.     In approximately 2016 or 2017, Defendant, RICHARD HARDIN, threatened to fire Plaintiff, David Anderson when Plaintiff, David Anderson, attempted to review information that would indicate whether Plaintiff, David Anderson, would be working another round of golf.

54.     Defendant RICHARD HARDIN exercised sufficient control over the operations of the Hudson National Golf Club caddie operations to be considered Plaintiff, David Anderson's, and caddies' employer under the FLSA and NYLL.

55.     Defendant RICHARD HARDIN is an employer under the FLSA and NYLL.

**4.4.  Defendant KEVIN MCCONAUGHY – Caddie Master**

56.     Defendant KEVIN MCCONAUGHY worked as a Caddie Master at the Hudson National Golf Club from approximately 2017 to approximately June of 2021.

57.     Defendant KEVIN MCCONAUGHY participated in supervising Plaintiff, David Anderson, and similarly situated caddies.

58.     As Caddie Master, Defendant KEVIN MCCONAUGHY set the work schedules of Plaintiff, David Anderson, and similarly situated caddies.

59.     As Caddie Master, Defendant KEVIN MCCONAUGHY paid Plaintiff, David Anderson, and similarly situated caddies.

60.     As Caddie Master, Defendant KEVIN MCCONAUGHY had power over caddies to hire, fire, set schedules, set terms and conditions of employment, set the rate and method of compensation, and maintain employment records (if any).

61.     Defendant KEVIN MCCONAUGHY exercised sufficient control over the operations of the Hudson National Golf Club caddie operations to be considered Plaintiff, David Anderson's, and caddies' employer under the FLSA and NYLL.

62.     Defendant KEVIN MCCONAUGHY is an employer under the FLSA and NYLL.

5.  **FACTUAL ALLEGATIONS**

5.1.  **Defendants' Employment Practices**

5.1.1. **CADDIE MASTER - Hudson National Golf Club Employed a "Caddie Master."**

63.      The Hudson National Golf Club employed a "Caddie Master."

64.      The Hudson National Golf Club "Caddie Master" was an employee of Hudson National Golf Club.

65.      The Hudson National Golf Club "Caddie Master" was an employee of Defendant, THE HUDSON NATIONAL GOLF CLUB, INC., (d/b/a "Hudson National Golf Club").

66.      The "Caddie Master" emailed caddies from an email which ended "@hudsonnational.org."

67.      Upon information and belief, Hudson National Golf Club provided the email account which ended "@hudsonnational.org," to the Caddie Master.

68.      Upon information and belief, Hudson National Golf Club controlled the email account which ended "@hudsonnational.org."

69.      Upon information and belief, Hudson National Golf Club had power to grant and revoke access to email accounts ending in "@hudsonnational.org."

70.      Each Caddie Master had power to hire.

71.      Applicants for caddie jobs were directed to the Caddie Master for the hiring process.

72.      For example, Plaintiff, David Anderson, was hired by Defendant RICHARD HARDIN, who was the Caddie Master.

73.      The Hudson National Golf Club website directed applicants for caddie jobs to the Caddie Master for the hiring process.

74.      The Caddie Master issued written and verbal reprimands to Plaintiff, David Anderson, and similarly situated caddies.

75.    The Caddie Master issued written and verbal threats to fire caddies for actual or perceived infractions.

76.    The Caddie Master threatened to fire caddies for putting a golf club in the wrong golfer's bag.

77.    During the employment period, each Caddie Master supervised caddies and set their terms and conditions of employment at Hudson National Golf Club.

78.    The Caddie Master directed caddies on dress code,

79.    The Caddie Master directed caddies on attire.

80.    The Caddie Master directed caddies on uniform requirements.

81.    The Caddie Master directed caddies on when to arrive and when to arrive to work.

82.    The Caddie Master directed caddies on when the caddies could leave work.

83.    The Caddie Master reprimanded caddies for actual or perceived infractions, such as (for instance) putting golf clubs in the wrong player's bag, arriving "late" or leaving "early."

84.    The Caddie Master directed caddies to repair ball marks and bunkers, clean the caddie shack and golf carts, bring golfers beverages and items, and police the pace of play, among other directions.

85.    The Caddie Masters set caddies' work schedules.

86.    The Caddie Masters emailed written schedules to caddies that listed caddies' names, dates, and times of to work.

87.    The Caddie Master identified which caddies would work and which would not.

88.    The Caddie Masters also directed caddies when to work and when to stay home if the schedule changed or if a "call-in" was needed.

89.    The Caddie Master assigned caddies to individual golfers.

90.    The Caddie Master also paid caddies for certain events

91.     The Caddie Master paid caddies if a golfer paid the caddie through a Club account.

**5.1.2.   <u>Defendants' Payroll Recordkeeping Practices.</u>**

92.     Upon information and belief, Hudson National Golf Club failed to keep accurate records of the number of hours worked each day by each caddie.

93.     Upon information and belief, Hudson National Golf Club failed to keep accurate records of the number of hours worked each week by each caddie.

94.     Upon information and belief, Hudson National Golf Club failed to keep accurate records of the time of arrival and departure of each caddie for each work shift.

95.     Upon information and belief, Hudson National Golf Club failed to keep accurate records of the regular wages earned by caddies.

96.     Upon information and belief, Hudson National Golf Club failed to keep accurate records of overtime wages earned by each caddie.

97.     Upon information and belief, Hudson National Golf Club failed to keep accurate records of tip credits claimed as part of each caddies' wage.

98.     Upon information and belief, Hudson National Golf Club failed to distribute lawful and accurate tip credit notices to caddies.

99.     Upon information and belief, Hudson National Golf Club maintained copies of "chits," cash advances charged to accounts which record payments to caddies, like Plaintiff, David Anderson.

**5.1.3.   <u>Powers and Responsibilities of Liquor License Principals.</u>**

100.     In New York, a liquor license grants the owner or possessor of the premises control over the food and beverage. N. Y. Alco. Bev. Cont. Law. § 106(1). These facts are sufficient to establish his right and ability to supervise the infringing activities.

101.    The rules and regulations associated with the liquor licensing process inherently create a collaborative relationship between the business and the principal officer's authority to provide a service as it relates to food and beverage.

102.    An individual's name listed as a principal on a liquor license suggests a general ability to supervise the establishment's operations and enjoy its profits.

103.    An individual's name listed as a principal on a liquor license also suggests (s)he keeps and maintains adequate records of all transactions involving the business transacted by such licensee which show the amount of alcoholic beverages, in gallons, purchased by such licensee together with the names, license numbers and places of business of the persons from whom the same were purchased, the amount involved in such purchases, as well as the sales of alcoholic beverages made by such licensee.

104.    According to the New York State Liquor Authority Handbook for Retail Licenses, the licensee is responsible for the activities of employees and patrons in all parts of the licensed premises, even if not always physically present.

105.    According to the New York State Liquor Authority Handbook for Retail Licenses, the licensee must keep adequate books and records of all transactions involving the licensed business, including records concerning employees, whether full or part time.

106.    According to the New York State Liquor Authority Handbook for Retail Licenses, the licensee is subject to disciplinary action whether he, or an employee, serves a visibly intoxicated person or minor, and accordingly is recommended to train employees concerning service of alcohol.

107.    In applying to hold a liquor license, the applicant must confirm the location of where alcohol is stored.

108.    The liquor license holder has a direct or indirect economic interest in the establishment.

109.     In applying to hold a liquor license, the applicant must confirm, among other items, whether the restaurant has a full kitchen and will serve full entrée like meals.

110.     In applying to hold a liquor license, the applicant must provide a diagram of the premises.

**5.2. <u>Plaintiff, David Anderson's and Similarly Situated Golf Caddies' Work Schedules and Compensation.</u>**

111.     At Hudson National Golf Club, the work period for golf caddies is from approximately April 10 to approximately November 20, i.e., approximately seven months per year.

112.     From before June of 2016 to June 23, 2021, Plaintiff, David Anderson, worked as a golf caddie at Hudson National Golf Club.

113.     During each golf season from 2016 to 2021, Plaintiff, David Anderson, worked approximately 69.5 to approximately 80.5 hours per week.

114.     During each golf season from 2016 to 2021, Plaintiff, David Anderson, worked approximately 6 days per week in which the start and end of each shift spread over more than 10 hours.

115.     Upon information and belief, COVID19 interfered with the usual work schedule of caddies in the golf season from approximately April 10, 2020, to approximately May 22, 2020.

116.     Plaintiff, David Anderson, was not paid by Hudson National Golf Club, except when Plaintiff, David Anderson, worked as a caddie on outings, marketing groups, and special events.

117.     Plaintiff, David Anderson, was not paid minimum wage by Hudson National Golf Club.

118.     Plaintiff, David Anderson, was not paid overtime wages at a rate of one and one half (1 and 1 ½) times his regular rate of pay.

119.    Plaintiff, David Anderson, was not paid spread-of-hours by Hudson National Golf Club or any of the Defendants.

120.    Plaintiff, David Anderson, was required to launder uniforms that Hudson National Golf Club issued to him and required him to wear.

121.    Plaintiff, David Anderson, was not reimbursed for the costs of laundering uniforms provided by Hudson National Golf Club.

122.    Plaintiff, David Anderson, was required to purchase additional uniforms to maintain the pace of work required at Hudson National Golf Club.

123.    Plaintiff, David Anderson, was not given wage statements with each payment of wages as required by the NYLL.

124.    Plaintiff, David Anderson, was not given a wage notice at the time of hiring or when his rates of pay changed that, inter alia, accurately reflected his rate or rates of pay and number of hours worked per week, as required by the NYLL.

125.    Plaintiff, David Anderson, was not given a tip credit notice.

### 5.3. Caddies Were Misclassified as Independent Contractors.

126.    All references to "caddies" include, but are not limited to Plaintiff, David Anderson.

127.    As a matter of economic reality, the caddies at Hudson National Golf Club are employees.

128.    As a matter of economic reality, the caddies depend on Hudson National Golf Club for the opportunity to render services.

129.    As a matter of economic reality, the caddies at Hudson National Golf Club are not in business for themselves.

130.    The caddies are economically dependent on Hudson National Golf Club.

131.    The caddies are within the direct control of Hudson National Golf Club.

132.    Hudson National Golf Club exercise a great deal of control over the caddies' daily activities.

### 5.3.1.   HIRE & FIRE - Hudson National Golf Club Had the Power to Hire and Fire Caddies.

133.    Hudson National Golf Club had power to hire and fire caddies.

134.    Hudson National Golf Club advertised on its website that applicants for a caddie position must go through a website titled "employment opportunities."

135.    Hudson National Golf Club advertised on its website that applicants for a caddie position must go through the Hudson National Golf Club's Caddie Master.

136.    Caddies were told that they would be fired if they left early.

137.    Caddies were told that they could be replaced if they were unwilling to work.

138.    Defendant KEVIN MCCONAUGHY wrote on the caddies' work schedule that, "Please keep in mind that if I have caddies that are not willing to work they will easily be replaced with someone else, thank you."

139.    When a particular incident occurred, Defendant KEVIN MCCONAUGHY threatened caddies with termination by saying "There was an incident tonight that is unacceptable and I don't care for the reason either, if there is one more thing that happens like this there will be severe consequences. I am up here working all day to make sure the members and guests enjoy their visit, there are 100 things to deal with throughout the day, and never should 1 be involving pettiness in the yard. There are plenty of caddies that will give everything to be here and I don't care who you are, if this ever happens again, you will be replaced, no questions asked. Come to work, be professional, do your job, it is literally that easy."

140.    Frequently, the Caddie Master required caddies to report the amount of money the golfer or guest paid to the Caddie. Then the Caddie Master could direct the caddie to return excess money to the member or guest if the Caddie Master determined the caddie was "overpaid."

141.     Hudson National Gold Club paid caddies approximately $125 per bag when the caddie was assigned to work for certain groups, such as marketing groups and golf digest raters. In those instances, caddies were required to tell the Caddie Master how much the golfers tipped the caddies. Then, Hudson National Gold Club would then reduce the amount it paid to the caddie by using the gratuities as an offset.

### 5.3.2.   <u>SUPERVISION – Hudson National Golf Club Supervised Caddies' Work.</u>

142.     Caddies were supervised by the Hudson National Golf Club and Defendants.

143.     Caddies wee instructed to avoid certain infractions.

144.     Caddies were threatened with punishments for perceived infractions.

145.     Defendant KEVIN MCCONAUGHY wrote to the caddies: "I am tired of seeing some of you take out rain jackets and other items in golf bags and then forgetting about them and leaving them in the starter shack. If someone's bag is too heavy you politely ask them if they can take something out they don't need, you don't tell them the bag is too heavy empty it. The next caddie who forgets a shoe bag will not be happy with how I handle it, It turns into a month long adventure to find out who it belongs to and how to get it back to them."

146.     In another instance, Defendant KEVIN MECCONAUGHY wrote to the caddies: "Gentlemen, We all need to be aware that when you are out caddying that you can be seen by a lot of people outside of your own group. Please do not ever move golf balls or improve the lie of your players, let the members and guests golf their ball! Thank you."

147.     Caddies were directed to clean and count golf clubs correctly.

148.     Caddies were reprimanded and threatened with punishment for putting clubs in the wrong bag.

149.     Caddies were threatened that they would be fined with paying for the cost of car services to send clubs back to golfers, removal from the work schedules, and withheld payments.

150.    For example, Defendant KEVIN MCCONAUGHY told the caddies, "Guys everyday it seems like someone puts the wrong club in the wrong bag after the round. Clean one set of clubs at a time and pay attention!!!! It makes our whole operation look awful. I am not going to be taking this so easily after today and you guys will be paying for car services to get the clubs to where they need to be."

151.    Defendant KEVIN MCCONAUGHY told the caddies: "You will not be getting paid until you clean and count the clubs in your bag and confirm with the player they are all there and in the correct bag! To go along with that they must be placed behind the correct car, even if it is in the top parking lot. I never want to see golf bags in the circle or by the bag drop unless they are getting picked up in a car service. Quit being lazy!!!!!!!!!!!!!!!!!!"

152.    When a caddie's wallet was reported stolen, Defendant KEVIN MCCONAUGHY, told the caddies: "Someone had the audacity to steal Landale's wallet right out of his locker yesterday. If it is not returned by tomorrow then we are going to have a serious issue. If I cannot trust you to not steal from each other the caddie shack will be no more and you can all sit outside while you wait. This problem has to be fixed immediately."

### 5.3.3.   WORK SCHEDULES - Hudson National Golf Club Controlled Caddies' Work Schedules.

153.    Hudson National Golf Club established work schedules that the caddies were required to obey.

154.    Caddies work schedules were controlled by Hudson National Golf Club.

155.    Caddie work schedules designated the date and time to begin work.

156.    Caddie work schedules designated the name of the caddie and arrival time.

157.    Caddies were frequently required to remain on duty while waiting for golfers' tee time. For example, a caddie could be scheduled to arrive at 1:00 PM and the tee time may not be

until an hour or more later. During that time, the caddie was required to remain on duty, without compensation.

158.    Tee time was frequently more than an hour and a half after the caddies scheduled work arrival time.

159.    If a golf round was rescheduled, the Caddie Master would reschedule the caddie without warning and require the caddie to remain on duty until the rescheduled round. The caddie was not paid for the on-duty time.

160.    Defendant RICHARD HARDIN issued written schedules to caddies that included the date of work, time of arrival, and the designated caddie who should report to work at that date and time.

161.    Defendant KEVEN MCCONAUGHY issued written schedules to caddies that included the date of work, time of arrival, and the designated caddie who should report to work at that date and time.

162.    In addition to schedules, caddies were also scheduled to work various events and tournaments at Hudson National Golf Club.

163.    Caddies were repeatedly directed to be "on time or early" for work.

164.    Defendant KEVIN MCCONAUGHY told caddies "EVERYONE BE HERE ON TIME OR EARLY READY TO GO!"

165.    Defendant RICHARD HARDIN directed caddies to "be on time or early."

166.    Caddies were reprimanded for lateness.

167.    Defendant RICHARD HARDIN told caddies that "The reason we send out emails with a time is so you can be here for that time, some of you feel that it is not important to be prompt. We can't stress enough to be here on time and ready for work."

168.    Defendant KEVIN MCCONAUGHY threatened caddies, on a work schedule, that "No more excuses anyone late isn't working and I want everyone to be early tomorrow."

169.    Frequently, caddies were prohibited from leaving "early."

170.    Defendant KEVIN MCCONAUGHY told caddies "I am sick and tired of guys leaving early, go work at Hudson Hills if you want to do that I am done with it. This is our busy season so either hang out and wait or go find somewhere else to work." And another time he reprimanded caddies, "Slow weekend is over, no more leaving early busy day tomorrow."

171.    Hudson National Golf Club controlled when caddies could take days off.

172.    Caddies were required to request days off.

173.    Caddies were told "Small Outing, if you want or need the day off please let me know asap."

174.    Hudson National Golf Club monitored the times that caddies arrived to, and left from, work.

175.    Defendant KEVIN MCCONAUGHY threatened caddies "I will be standing at the shack looking at the clock, do not be late tomorrow!!!!!!!!!!!!"

176.    Defendant KEVIN MCCONAUGHY also directed caddies that "Everyone needs to walk up and sign in themselves so I can tell you your time."

177.    Caddies were required to attend meetings by Hudson National Golf Club to go over rules and instructions.

178.    When golfers canceled or change rounds, then Hudson National Golf Club changed caddies' work schedules.

179.    When golfers canceled or changed their rounds, the caddies were required to stay on site in case other golfers to came, even though caddies were not paid for the on-duty time.

180.    During the COVID19 pandemic shutdown in 2020, caddies were told not to come into work if they were feeling sick.

181.    Caddies did not work at their own convenience at Hudson National Golf Club.

### 5.3.4.   TERMS & CONDITIONS - Hudson National Golf Club Supervised and Controlled Caddies' Conditions of Employment.

182.    Hudson National Golf Club assigned caddies to work with specific golfers.

183.    Caddies were not free to reject work with assigned golfers.

184.    Caddies were told not to approach golfers about caddying for them.

185.    If a caddie refused to work with an assigned golfer, the caddie would be punished in one or more ways, such as by removing the caddie from the schedule or assigning the caddie lower paying or undesirable golfers and groups.

186.    Hudson National Golf Club controlled the terms and conditions of caddies' work.

187.    Defendant KEVIN MCCONAUGHY directed caddies that "If you want to Caddie at Hudson National you have to 1. Show up on time and 2. Be a professional Caddie. These are 2 very basic rules that some people have not been following and I am ready to start making some changes to solve that."

188.    Caddies were instructed on how to do their work.

189.    Caddies were reprimanded for perceived wrongdoing.

190.    Defendant KEVIN MCCONAUGHY told caddies, "As a walking only golf course with mandatory caddies we have no excuse to ever have bunkers that are not raked. Please do not let the players rake the bunkers as they have no clue what they are doing, anytime a player hits in a bunker make sure you leave it as perfect as you found it"

191.    Defendant KEVIN MCCONAUGHY told caddies, "I just spoke with Brett and he would like to make sure we are doing a better job of placing the bunker rakes in the correct areas after use. We can't have them laying in the fescue or laying any other way than parallel to the hole."

192.     Caddies were required to work beyond the scope of assisting assigned golfer(s).

193.     Defendant KEVIN MCCONAUGHY told caddies, "Make a special effort to repair ball marks even if they are not part of your groups doing."

194.     Caddies were directed to do work beyond caddying.

195.     Caddies were directed to move golf carts and clean trash out of golf carts and the caddie shack.

196.     Caddies were told to "go above and beyond for members."

197.     Plaintiff, David Anderson, was required to drive members' golf clubs to the City of New York, catch stray cats at the clubhouse, chauffeur members various places such as the train station, clean and take trash out of the caddie shack, winterize the caddie shack, install a PA system at the caddie shack, remove a TV from storage, hook up a TV, and collect money to purchase supplies for the caddie shack, among other tasks.

198.     Caddies were directed to enforce rules set by Hudson National Golf Club.

199.     Defendant KEVIN MCCONAUGHY told caddies that "If anyone is seeing members or guests smoking and then throwing their cigarettes on the course please let me know tomorrow."

200.     Caddies were required to enforce the pace of play using equipment provided by Hudson National Golf Club.

201.     Defendant KEVIN MCCONAUGHY told caddies "Another point to mention is that we will be using Tagmarshall gps tracking devices to monitor pace of play that we will ask 1 caddie per group to carry"

202.     Defendant KEVIN MCCONAUGHY told caddies "I am going to make a big emphasis on pace of play for the remainder of the season as groups seem to be slowing down rather than speeding up without the fescue. You can let your groups know if you see stretch out there he is

watching you because you are slow, he will be more aggressive with slow groups and we are going to do our best to have everyone play in under 4:15 the rest of the year."

203.     Caddies were required to park in designated areas.

204.     Caddies were prohibited from using their phones except for medical emergencies.

205.     Caddies were directed to treat members' children just like members.

206.     Caddies were punished by assignment to undesirable golfers or rounds or removal from the work schedule.

207.     Caddies were repeatedly reminded to behave according to Hudson National Golf Club rules and regulations.

208.     Caddies were told of professionalism requirements.

209.     Caddies were told to "work hard."

210.     Caddies were told to "do our best job to make it a seamless operation and work together."

211.     Caddies were told to make events and operations as "seamless" as possible,

212.     Caddies were told to "have some pride working for" Hudson National Golf Club.

213.     During the 2020 COVID19 pandemic shutdown, Hudson National Golf Club controlled how caddies worked.

214.     During part of the COVID19 pandemic, caddies were directed to avoid touching the golf clubs, that golfers would carry their own bags, but caddies would still be responsible for spotting balls, fixing ball marks and divots, reading greens and would work on schedule.

215.     Caddies were required to wear uniforms.

216.     Uniforms took the form of one-piece jumpsuits with Hudson National Golf Club logos on front and back.

217.     The caddies' names were put on the one-piece jumpsuit uniform.

218.     Caddies were directed to pick up uniforms at the start of the season.

219.     Caddies were told, "This is our time to shine, important to be dressed in clean uniform, hat and groomed."

220.     At times, caddies were required to wear bibs.

221.     Caddies were also required to obey a dress code.

222.     Caddies were told "Whoever is working today wear a red or white golf shirt and khaki pants or shorts, that is what you will be caddying in today."

223.     Caddies were also directed to wear "white shoes only at all times, even second loops" and "white undershirts only" and "Hudson National White hats only."

224.     Caddies were told to avoid "sketchy beards or facial hair."

### 5.3.5.    CONTROL OVER PAY RATES – Hudson National Golf Club Determined the Rate and Method of Payment to Caddies.

225.     Hudson National Golf Club exercised control over caddies' compensation rates.

226.     Ordinarily, the golfer(s) or guests to whom the caddies were assigned were the sole source of income for the caddies.

227.     Hudson National Golf Club did not pay caddies for their work except when caddies worked for marketing groups, prospective members, outings, golf digest groups, and rounds by friends of certain club managers and professional staff (Caddie Master, assistant Caddie Master, Head Pro, Director of Golf).

228.     Caddies were discouraged from discussing their rates with golfers and their guests.

229.     Caddies were discouraged from discussing their compensation with golfers, even though golfers and guests were often the only source of income for caddies.

230.     Hudson National Golf Club suggested caddie compensation rates of $125 Per Bag for 18 Holes and $65 Per Bag for 9 holes.

231.    Even though Hudson National Golf Club outwardly "suggested," a bag rate, Defendant KEVIN MCCONAUGHY told caddies "Please remember that the bag rate is $125 and how lucky we all are to even be working this season given the circumstances. I do not want to hear anyone complain about making the suggested bag rate or else they can go work somewhere else where the rate is $75-$100 per bag, no more complaining!!!"

232.    Hudson National Golf Club frequently served as the conduit through which golfers paid caddies.

233.    Golfers could pay caddies through a Club account; in which case the Club paid the caddies using a "chit."

234.    Many payments by golfers to caddies were through the Caddie Master or through the Hudson National Golf Club's chit system.

235.    If a golfer did not pay the caddie enough, the Hudson National Golf Club could pay the subject caddie up to the suggested bag rate of $125, and then bill the golfer(s).

**5.3.6.    RECORDS - Hudson National Golf Club was Responsible for Maintaining Employment Records.**

236.    Defendants maintained work schedules that were sent to caddies.

237.    Upon information and belief, Hudson National Golf Club has receipts for payments from golfers to caddies, i.e., "chits."

238.    On top of some work schedules, caddies were ordered to sign "independent contractor forms."

239.    Defendant KEVIN MCCONAUGHY directed caddies, "If you didn't sign the independent contractor form today please sign one tomorrow."

240.    The use of the terms "independent contractor," does not transform them into magic words imbued with legally controlling significance.

241.     Defendants willfully misclassified caddies by ordering caddies to sign "independent contractor" forms while simultaneously controlling the hiring, firing, supervision, scheduling, and compensation of caddies.

### 5.3.7.   PREMISES & EQUIPMENT – Caddies Worked Almost Exclusively on Hudson National Golf Club's Premises.

242.     Caddies primarily worked on Hudson National Golf Club's golf course and grounds.

243.     Hudson National Golf Club owned and controlled the caddie shack, where caddies assembled for work.

244.     Caddies used Hudson National Golf Club's equipment.

245.     Caddies used golf carts that were owned and controlled by Hudson National Golf Club.

246.     Caddies used the Club's rakes on the golf course.

247.     Caddies were required to always carry certain equipment that included towels, a laser, and sand bottle. Hudson National Golf Club provided GPS devices for caddies to monitor and enforce the pace of play rules on golfers. During the COVID19 pandemic shutdown, caddies were given hand sanitizer from the Caddie Master.

248.     Caddies were banned from entering the golf shop unless making a purchase.

249.     Caddies regularly served alcoholic beverages and food to golfers from Hudson National Golf Club.

250.     For instance, in approximately five to seven rounds per week, Plaintiff, David Anderson, served food and/or alcoholic beverages to golfers.

251.     Upon information and belief, all alcohol that golfers drank on the course came from Hudson National Golf Club.

### 5.3.8.   NO INDEPENDENT CADDIE BUSINESSES – Caddies Lacked a Business that Shifted from one Joint Employer to Another.

252.   Caddies were not required to set up independent business entities such as corporations or LLCs.

253.   Caddies did not work for independent or outside business entities.

254.   Caddies were not required to make large up-front investments to caddie at Hudson National Golf Club.

255.   Caddies did not bear significant risk of loss by working at Hudson National Golf Club.

256.   Caddying at Hudson National Golf Club did not require substantial independent business initiative.

257.   Caddying at Hudson National Golf Club did not require business management skills.

### 5.3.9.   INTEGRAL LINE JOB – Caddies Performed a Discrete Line Job that was Integral to Hudson National Golf Club's Business as a Golf Course.

258.   Caddies are integral to Hudson National Golf Club.

259.   Hudson National Golf Club is primarily a golf course.

260.   Hudson National Golf Club prominently features pictures of its golf course on its website.

261.   Hudson National Golf Club advertises that the course was designed by Tom Fazio, a half-of-fame golf course architect.

262.   Hudson National Golf Club is a walking golf course.

263.   Hudson National Golf Club requires golfers to use caddies on the course.

264.   Golfers are generally prohibited from golfing at Hudson National Golf Club without a caddie.

265.     Hudson National Golf Club prohibits use of the golf course for non-golf purposes such as running, jogging, or walking.

266.     Hudson National Gold Club requires golfers to arrange for use of specific caddies through the Hudson National Golf Club.

267.     Upon information and belief, Hudson National Golf Club generally prohibits golfers from bringing their own caddies.

### 5.3.10.  EXCLUSIVE EMPLOYMENT – Caddies Worked Virtually Exclusively for Hudson National Golf Club

268.     Hudson National Golf Club held a "staff day" which included caddies.

269.     Caddies were referred to as having a "job" and working at Hudson National Golf Club.

270.     In an email with the subject line "DO YOUR JOB" Defendant KEVIN MCCONAUGHY reprimanded caddies for not cleaning out golf carts.

271.     Defendant KEVIN MCCONAUGHY told caddies, "Gentlemen, I played a couple holes today and I was not very happy with the amount of ball marks I saw on the greens. Considering we are doing 2 caddies per foursome again and you are all riding in the carts I expect this to never be an issue again and I will be sure to keep a close eye on anyone not doing their job."

272.     Caddies were told, "This should be another great season at Hudson and it is all of our jobs to make that happen for the members and each other. If anyone has any questions please let me know."

273.     Caddies were told, "Come to work, be professional, do your job, it is literally that easy."

274.     Caddies were virtually prohibited from working outside of the Hudson National Golf Club during the golf season.

275.    To enforce a prohibition on outside employment, caddies were prohibited from taking days off.

276.    Defendant KEVIN MCCONAUGHY told caddies "Busy season is here, no more days off and be on time!"

277.    Defendant KEVIN MCCONAUGHY told caddies "We are open and will have member play during the Met AM, August 1-4 so no days off."

278.    Defendant RICHARD HARDIN told caddies "Guys, as of now Wednesday looks VERY slow. Since the season has been so busy, if you would like the day off please REQUEST, and it's only a request, the day off. I will let you know as soon as I can if your request is approved."

279.    Short of termination, caddies could also be removed from the schedule or assigned undesirable golf rounds.

6.    **COLLECTIVE ACTION ALLEGATIONS**

280.    The claims in this Complaint arising out of the FLSA are brought by Plaintiff, David Anderson, on behalf of himself and similarly situated individuals who worked as golf caddies at the Hudson National Golf Club since the date three years prior to the filing of this action and who elect to opt-in to this action (the "FLSA Collective").

281.    The FLSA Collective consists of golf caddies who have been victims of Defendants' common policies and practices that have violated their rights under the FLSA by, *inter alia*, willfully denying them minimum wage, overtime pay and other monies.

282.    As part of their regular business practice, Defendants intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to the Plaintiff, David Anderson, and the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

a.  willfully failing to pay its employees, including Plaintiff, David Anderson, and the FLSA Collective, minimum wages for all hours worked

b.  willfully failing to pay its employees, including Plaintiff, David Anderson, and the FLSA Collective, the appropriate premium overtime wages for all hours worked in excess of 40 hours in a workweek;

c.  forcing employees to pay for required uniform cleaning costs; and,

d.  willfully failing to record all of the time that its employees, including Plaintiff, David Anderson, and the FLSA Collective, have worked for the benefit of Defendants.

283.    Defendants' unlawful conduct is pursuant to a corporate policy or practice of minimizing labor costs by misclassifying Plaintiff, David Anderson, and the FLSA Collective as independent contractors and failing to properly compensate Plaintiff, David Anderson, and the FLSA Collective for the hours they work.

284.    Defendants are aware or should have been aware that federal law required them to pay Plaintiff, David Anderson, and the FLSA Collective minimum wages for all the hours they worked.

285.    Defendants are aware or should have been aware that federal law required them to pay Plaintiff, David Anderson, and the FLSA Collective overtime premiums for hours worked in excess of 40 hours per week.

286.    The FLSA Collective would benefit from the issuance of a court supervised notice of this lawsuit and the opportunity to join it. This notice should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

287.    Upon information and belief, those similarly situated employees are known to Defendants, are readily identifiable, and can be located through Defendants' records.

288.     Defendants engaged in deceptive conduct—including but not limited to requiring caddies to sign an "independent contractor form"— to lead Plaintiff, David Anderson, and Collective and Class Members to believe that they were independent contractors and not employees, which prevented Plaintiff, David Anderson, and Collective and Class Members from discovering or asserting their claims any earlier than they did.

## 7. **CLASS ACTION ALLEGATIONS**

289.     The claims in this Complaint arising out of the NYLL are brought by Plaintiff, David Anderson, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and a class consisting of all persons who have worked as caddies at the Hudson National Golf Club for the past six years (the "Rule 23 Class").

290.     The members of the Rule 23 Class are so numerous that joinder of all members is impracticable.

291.     Upon information and belief, the size of the Rule 23 Class is at least forty (40), and approximately 100, individuals.

292.     Although the precise number of such employees is unknown, the facts on which the calculation of that number depends are presently within the control of Defendants.

293.     Defendants have acted or have refused to act on grounds generally applicable to the Rule 23 Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Rule 23 Class as a whole. For example, none of the Rule 23 class members are paid minimum or overtime wages or spread of hours; nor are they given wage notices and statements.

294.     Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting them individually and include, but are not limited to, the following:

a.   Whether Defendants violated NYLL Articles 6 and 19, and the supporting New York State Department of Labor Regulations;

b.   Whether Defendants failed to pay Plaintiff and the Rule 23 Class minimum wages for all of the hours they worked;

c.   Whether Defendants correctly compensated Plaintiff, David Anderson, and the Rule 23 Class for hours worked in excess of 40 hours per workweek;

d.   Whether Defendants correctly compensated Plaintiff, David Anderson, and the Rule 23 Class for spread of hours for all shifts whose start and end times spread more than ten hours apart;

e.   Whether Defendants failed to keep true and accurate time and pay records for all hours worked by Plaintiff, David Anderson, and the Rule 23 Class, and other records required by the NYLL;

f.   Whether Defendants failed to furnish Plaintiff, David Anderson, and the Rule 23 Class with wage notices, as required by the NYLL;

g.   Whether Plaintiff, David Anderson, and the Rule 23 Class was required to pay for uniform cleaning costs;

h.   Whether Defendants failed to furnish the Plaintiff, David Anderson, and the Rule 23 Class with accurate statements of wages, hours worked, rates paid, and gross wages, as required by the NYLL;

i.   Whether Defendants' policy of failing to pay workers was instituted willfully or with reckless disregard of the law; and

j.   the nature and extent of class-wide injury and the measure of damages for those injuries.

295.    The claims of the Plaintiff, David Anderson, are typical of the claims of the Rule 23 Class he seeks to represent. Plaintiff, David Anderson, and all of the Rule 23 Class members work, or have worked, as caddies at the Hudson National Golf Club. Plaintiff, David Anderson, and the Rule 23 Class members enjoy the same statutory rights under the NYLL, including to be properly compensated for all hours worked.

296.    Plaintiff, David Anderson, and the Rule 23 Class members have all sustained similar types of damages because of Defendants' failure to comply with the NYLL. Plaintiff, David Anderson, and the Rule 23 Class members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct.

297.    Plaintiff, David Anderson, will fairly and adequately represent and protect the interests of the members of the Rule 23 Class.

298.    Plaintiff, David Anderson, has retained counsel competent and experienced in wage and hour litigation, which has investigated potential claims, and has the resources to commit to representing the class.

299.    There is no conflict between the Plaintiff, David Anderson, and the Rule 23 Class members.

300.    A class action is superior to other available methods for the fair and efficient adjudication of this litigation. The members of the Rule 23 Class have been damaged and are entitled to recovery as a result of Defendants' violations of the NYLL, as well as their common and uniform policies, practices, and procedures. Although the relative damages suffered by individual Rule 23 Class members are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation. The class members individually lack the financial resources to conduct a thorough examination of Defendants' timekeeping and compensation

practices and to prosecute vigorously a lawsuit against Defendants to recover such damages. In addition, class litigation will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

301.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

## 8.  CAUSES OF ACTION

### 8.1.  FIRST CAUSE OF ACTION – Fair Labor Standards Act – Unpaid Minimum Wages

302.    Plaintiff, David Anderson, realleges and incorporates by reference all allegations in all preceding paragraphs.

303.    Plaintiff, David Anderson, has consented in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b).

304.    At all times relevant, Plaintiff, David Anderson, and the members of the FLSA Collective were or have been employees within the meaning of 29 U.S.C. §§ 201 et seq.

305.    At all times relevant, Defendants have been employers of Plaintiff, David Anderson, and the members of the FLSA Collective, engaged in commerce and /or the production of goods for commerce within the meaning of 29 U.S.C. §§ 201 et seq.

306.    Defendants have failed to pay Plaintiff, David Anderson, and the members of the FLSA Collective the minimum wages to which they are entitled under the FLSA.

307.    Defendants' unlawful conduct, as described in this Complaint, has been willful and intentional. Defendants were aware or should have been aware that the practices described in this Class Action Complaint were unlawful. Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff, David Anderson, and the members of the FLSA Collective.

308.    Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. §§ 201 et seq.

309.    As a result of Defendants' willful violations of the FLSA, Plaintiff, David Anderson, and the members of the FLSA Collective have suffered damages by being denied minimum wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201 et seq.

**8.2. SECOND CAUSE OF ACTION - Fair Labor Standards Act - Overtime Wages**

310.    Plaintiff, David Anderson, realleges and incorporates by reference all allegations in all preceding paragraphs.

311.    Defendants have failed to pay Plaintiff, David Anderson, and the members of the FLSA Collective the premium overtime wages to which they are entitled under the FLSA for all hours worked beyond 40 per workweek.

312.    Defendants' unlawful conduct, as described in this Complaint, has been willful and intentional. Defendants were aware or should have been aware that the practices described in this Complaint were unlawful.

313.    Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff, David Anderson, and the members of the FLSA Collective.

314.    Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. §§ 201 et seq.

315.    As a result of Defendants' willful violations of the FLSA, Plaintiff, David Anderson, and the members of the FLSA Collective have suffered damages by being denied overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts,

liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201 et seq.

**8.3. <u>THIRD CAUSE OF ACTION - New York Labor Law - Unpaid Minimum Wages</u>**

316.    Plaintiff, David Anderson, realleges and incorporates by reference all allegations in all preceding paragraphs.

317.    Defendants have engaged in a widespread pattern, policy, and practice of violating the NYLL, as detailed in this Complaint.

318.    At all times relevant, Plaintiff, David Anderson, and the members of the Rule 23 Class have been employees of Defendants, and Defendants have been employers of Plaintiff, David Anderson, and the members of the Rule 23 Class within the meaning of the NYLL §§ 650 et seq., and the supporting New York State Department of Labor Regulations.

319.    Defendants have failed to pay Plaintiff, David Anderson, and the members of the Rule 23 Class the minimum hourly wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations.

320.    Through their knowing or intentional failure to pay minimum hourly wages to Plaintiff, David Anderson, and the members of the Rule 23 Class, Defendants have willfully violated the NYLL, Article 19, §§ 650 et seq., and the supporting New York State Department of Labor Regulations.

321.    Due to Defendants' willful violations of the NYLL, Plaintiff, David Anderson, and the members of the Rule 23 Class are entitled to recover from Defendants their unpaid minimum wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

**8.4.  FOURTH CAUSE OF ACTION - New York Labor Law - Unpaid Overtime**

322.    Plaintiff, David Anderson, realleges and incorporates by reference all allegations in all preceding paragraphs.

323.    Defendants have failed to pay Plaintiff, David Anderson, and the members of the Rule 23 Class the premium overtime wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations for all hours worked beyond 40 per workweek.

324.    Through their knowing or intentional failure to pay Plaintiff, David Anderson, and the members of the Rule 23 Class overtime wages for hours worked in excess of 40 hours per workweek, Defendants have willfully violated the NYLL, Article 19, §§ 650 et seq., and the supporting New York State Department of Labor Regulations.

325.    Due to Defendants' willful violations of the NYLL, Plaintiff, David Anderson, and the members of the Rule 23 Class are entitled to recover from Defendants their unpaid overtime wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

**8.5.  FIFTH CAUSE OF ACTION - New York Labor Law - Failure to Provide Wage Notices**

326.    Plaintiff, David Anderson, repeats and re-alleges the allegations set forth in the preceding paragraphs.

327.    Pursuant to Section 195(1) of the NYLL, an employer is required to provide its employees at the time of hiring a notice containing information, such as, "the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; ... the regular pay day designated by the employer ...; [and] the name of the employer .... For all employees who are not exempt from overtime compensation ..., the notice must sate the regular hourly rate and overtime rate of pay."

328.    Pursuant to Section 198-1(b) of the NYLL, an employee that does not receive a wage notification, as required by NYLL § 195(1), may bring a civil action to recover damages of $250 for each workday that the violation occurs or continues to occur, but not to exceed $5,000.

329.    At the time of hire, Defendants did not provide Plaintiff, David Anderson, or members of the putative class with wage notifications informing them of, among other things, (1) their regular rates of pay, (2) their overtime rates of pay, (3) the basis of their rates of pay (e.g., whether they were hourly employees), or (4) the regular pay day designated by Defendants.

330.    Defendants violated NYLL § 195(1) by failing to provide Plaintiff, David Anderson, and members of the putative class with wage notifications containing the information required by NYLL § 195, et seq.

331.    The failure of Defendants to provide Plaintiff, David Anderson, and members of the putative class with wage notifications in violation of NYLL § 195 was willful.

332.    By the foregoing reasons, Defendants are liable to Plaintiff, David Anderson, and members of the putative class the statutory amounts, plus attorney's fees, costs, and any other damages permitted under the NYLL.

**8.6. <u>SIXTH CAUSE OF ACTION - New York Labor Law - Failure to Provide Accurate Wage Statements</u>**

333.    Plaintiff, David Anderson, repeats and re-alleges the allegations set forth in the preceding paragraphs.

334.    Pursuant to Section 195(3) of the New York Labor Law, an employer is required to furnish each employee with a statement with every payment of wages that identifies, among other things, whether the employee is paid by the hour, shift, day, week, salary, piece, commission, or in another manner. For employees that are not exempt from overtime compensation under New York state law or regulation, such wage statement must also include "the regular hourly rate or rates of

pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked."

335. Pursuant to Section 198-1(d) of the New York Labor Law, an employee that does not receive a wage statement, as required by NYLL § 195(3), may bring a civil action to recover damages of $50 for each workday that the violation occurs or continues to occur, but not to exceed $5,000.

336. Named Plaintiffs and members of the putative class did not receive any wage statements from the Defendants.

337. Defendants violated NYLL § 195(3) by failing to provide Named Plaintiffs and members of the putative class with wage statements containing the information required by NYLL § 195(3).

338. The failure of Defendants to provide Named Plaintiffs and members of the putative class with wage statements in violation of NYLL § 195 was willful.

339. By the foregoing reasons, Defendants are liable to Plaintiff, David Anderson, and members of the putative class and collective the statutory amounts, plus attorney's fees, costs, and any other damages permitted under the NYLL.

**8.7. <u>SEVENTH CAUSE OF ACTION - Unpaid Spread-of-Hours Pay</u>**

340. Plaintiff, David Anderson, repeats and re-alleges the allegations set forth in the preceding paragraphs.

341. 12 NYCRR § 142-2.4 requires that "[a]n employee shall receive one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required in this Part for any day in which... the spread of hours exceeds 10 hours [in a day]." ("Spread of hours" compensation).

342. 12 NYCRR 146-1.6 requires that "on each day on which the spread of hours exceeds 10, an employee shall receive one additional hour of pay at the basic minimum hourly rate."

343.     Plaintiff, David Anderson, and other members of the putative class regularly worked more than ten (10) hours in a day.

344.     Defendants did not pay Plaintiff, David Anderson, and other members of the putative class an additional hour's pay when they worked more than ten (10) hours in a day.

345.     Consequently, by failing to pay to Plaintiff, David Anderson, an additional hour's pay when Plaintiff, David Anderson, worked more than ten (10) hours in a day, Defendants violated 12 NYCRR § 142-2.4 and 12 NYCRR 146-1.6.

346.     By the foregoing reasons, Defendants have violated 12 NYCRR § 142-2.4 and 12 NYCRR 146-1.6 and are liable to Plaintiff, David Anderson, in an amount to be determined at trial, plus damages, interest, attorneys' fees and costs.

## 8.8. EIGHTH CAUSE OF ACTION – New York Labor Law – Uniform Violations

347.     Plaintiff, David Anderson, realleges and incorporates by reference all allegations in all preceding paragraphs.

348.     Defendants have required Plaintiff, David Anderson, and the members of the Rule 23 Class to purchase and wear a uniform consisting of clothing that is not ordinary basic street clothing and that may not be worn as part of Plaintiff, David Anderson, and the members of the Rule 23 Class' ordinary wardrobe.

349.     Defendants failed to launder and/or maintain mandatory uniforms for Plaintiff, David Anderson, and the members of the Rule 23 Class, and failed to pay Plaintiff, David Anderson, and the members of the Rule 23 Class the required weekly amount for uniform maintenance in addition to the required minimum wage.

350.     Through their knowing or intentional failure to pay and/or reimburse Plaintiff, David Anderson, and the members of the Rule 23 Class for mandatory uniform-related expenses,

Defendants have willfully violated NYLL, Article 6, §§ 190 et seq., and the supporting New York State Department of Labor Regulations.

351.    Due to Defendants' willful violations of the NYLL, Plaintiff, David Anderson, and the members of the Rule 23 Class are entitled to recover from Defendants the costs of purchasing and maintaining their uniforms, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

## 9.  PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, David Anderson, on behalf of himself and all other similarly situated employees, respectfully requests that this Court grant the following relief:

352.    Designate this action as a collective action on behalf of the FSLA Collective and authorize the prompt issuance of a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

353.    Certify this case as a class action pursuant to Rule 23 for the class of employees described herein, certification of Plaintiffs as the class representatives, and designation of Plaintiffs' counsel as Class Counsel;

354.    Declare that Defendants violated the minimum wage provisions of the FLSA and NYLL;

355.    Declare that Defendants violated the spread of hours provisions of the NYLL;

356.    Declare Defendants violated the notice and recordkeeping provisions of the NYLL and WTPA;

357.    Declare that Defendants' violations of the FLSA and NYLL were willful;

358.     Award Plaintiff, the FLSA Collective, and the Rule 23 Class unpaid minimum wages under the FLSA and NYLL;

359.     Award Plaintiff, the FLSA Collective, and the Rule 23 Class unpaid overtime wages under the FLSA and NYLL;

360.     Award Plaintiff, the FLSA Collective, and the Rule 23 Class spread-of-hours wages under the NYLL;

361.     Award Plaintiff, the FLSA Collective, and the Rule 23 Class liquidated damages under the FLSA;

362.     Award Plaintiff, the FLSA Collective, and the Rule 23 Class liquidated damages under the NYLL;

363.     Award Plaintiff, the FLSA Collective, and the Rule 23 Class damages for failure to lawfully issue wage notices under the NYLL;

364.     Award Plaintiff, the FLSA Collective, and the Rule 23 Class damages for failure to lawfully issue wage statements under the NYLL;

365.     Award Plaintiff, the FLSA Collective, and the Rule 23 Class award of prejudgment and post-judgment interest;

366.     Award of costs, expenses, and reasonable attorneys' and expert fees; and,

367.     Award such other and further relief as this Court deems just and proper.

## 10. **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.

Dated: January 20, 2023                     Saco & Fillas, LLP
                Astoria, New York

                                            By: _____*/s/ Clifford Tucker*_____
                                                Clifford Tucker, Esq.
                                                31-19 Newtown Ave., 7th Floor.
                                                Astoria, New York 11102
                                                Ph: 718-269-2243
                                                CTucker@SaccoFillas.com

## NOTICE OF INTENTION TO ENFORCE SHAREHOLDER
## LIABILITY FOR SERVICES RENDERED

**TO**: THE HUDSON NATIONAL GOLF CLUB, INC.

PLEASE TAKE NOTICE THAT pursuant to the provisions of Section 630 of the Business Corporation Law of New York and Section 609 of the Limited Liability Company Law of New York, you are hereby notified that the Plaintiff, David Anderson and others similarly situated intend to charge you and hold you personally liable, jointly and severally, as one of the ten largest shareholders and/or members of THE HUDSON NATIONAL GOLF CLUB, INC for all debts, wages, and/or salaries due and owing to them as laborers, servants, and/or employees of the said corporation/LLC for services performed by them for the said corporation/LLC within the six (6) years preceding the date of this notice and have expressly authorized the undersigned, as their attorney, to make this demand on their behalf

Dated: Astoria, New York
       January 20, 2023

SACCO & FILLAS, LLP

By: _/s/ Clifford Tucker_____
       Clifford Tucker, Esq.
       Attorneys for Plaintiff
       31-19 Newtown Avenue, Seventh Floor
       Astoria, New York 11102
       Tel: 718-269-2243
       CTucker@SaccoFillas.com

**DEMAND BY EMPLOYEES TO INSPECT SHARE RECORDS AND MINUTES PURSUANT TO SECTION 624 OF THE NEW YORK STATE BUSINESS CORPORATION LAW**

**TO**: THE HUDSON NATIONAL GOLF CLUB, INC.

PLEASE TAKE NOTICE THAT the Plaintiff, David Anderson and others similarly situated as employees of the above corporation or LLC who intend to demand, pursuant to the provisions of Section 630 of the Business Corporation Law of New York, and Section 609 of the Limited Liability Company Law of New York, payment of debts, wages, and/or salaries due and owing to them as laborers, servants, and/or employees of the above corporation or LLC for services performed by them for the above corporation or LLC within the six (6) years preceding the date of this notice from the ten largest shareholders of the above corporation or LLC, and who have expressly authorized the undersigned, as their attorney, to make this demand on their behalf.

HEREBY DEMAND the right to examine, in person or by agent or attorney, during usual business hours, the minutes of the proceedings of the shareholders and records of shareholders of the above corporation/LLC and to make extracts therefrom on or after five (5) days from receipt of this notice.

Dated: Astoria, New York  
          January 20, 2023

SACCO & FILLAS, LLP

By: _/s/ Clifford Tucker_  
        Clifford Tucker, Esq.  
        Attorneys for Plaintiff  
        31-19 Newtown Avenue, Seventh Floor  
        Astoria, New York 11102  
        Tel: 718-269-2243  
        CTucker@SaccoFillas.com